**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Interlogix, Inc., f/k/a ITI Technologies, Inc.,**

**Plaintiff,**

**v.**

**Honeywell, Inc., Honeywell International, Inc., Pittway Corporation, System Sensor, Ademco Group, and ADI**

**Defendants.**

**Civil No. 01-115 (DSD/SRN)**

**ORDER**

---

Thomas Duston, Esq., Bradford Lyerla, Esq., and Brooks Poley, Esq., on behalf of Plaintiff

Thomas Dutton, Esq., and Elizabeth Schmiesing on behalf of Defendants

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendants' Motion to Strike Plaintiff's Third "Supplemental" Responses to Defendants' Second Set of Interrogatories (Doc. No. 79); Defendants' Motion for a Separate Trial on the Strategic Supplier Agreement Claim (Count 9) (Doc. No. 94); and on Plaintiff's Motion to Require Supplementation of Discovery Responses (Doc. No. 85); and Plaintiff's Motion to Strike Defendants' Cross-Motion for Summary Judgment of Patent Invalidity and Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement (Doc. No. 89).



FILED SEP 2 6 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

## I. BACKGROUND

This case originated from a commercial dispute. Plaintiff designs and distributes security systems for residential and commercial customers. (Compl. ¶11). Plaintiff purchased wireless smoke detectors from Defendants to be incorporated into Plaintiff's security systems. Id. at ¶11-12. The smoke detectors were allegedly defective.[1] Id. In its state court complaint, Plaintiff asserted a variety of common law claims against Defendants. Defendants removed the case to this Court on the basis of diversity of citizenship jurisdiction, 28 U.S.C. § 1332. Defendants answered the complaint and asserted a counterclaim for correction of inventorship, patent infringement, and declaratory relief. (Doc. No. 5). In the counterclaim, Defendants sought to correct the inventorship of United States Patent Numbers 5,686,885 and 5,686,896 (the '896 patent) and, thereafter, sought a declaration that Plaintiffs were infringing the '896 patent. (Def.'s Countercl. ¶¶1, 4-25); (Doc. No. 5). The '896 patent was for a "Low Battery Inhibitor for a Sensor"–or a method and apparatus for reporting the battery condition of a device such as a smoke detector. Plaintiff, in turn, answered Defendants' counterclaim and asserted its own counterclaim for declaration of ownership of the '896 patent, patent infringement of the '896 patent, and declaratory relief. (Pl.'s Countercl. ¶¶8-18); (Doc. No. 8). Defendants responded to Plaintiff's counterclaim simply denying the claims. (Doc. No. 9).

Plaintiff contends that it owns the '896 patent because its employee, John Bergman, invented the low battery sensor. Defendants contend that they own the '896 patent because their employee, Paul Johnson, invented the low battery sensor.

---

[1] Ironically, the alleged defect was that the smoke detectors themselves would start on fire or smoke due to circuitry problems. (Compl. ¶13-15).

This Court set a Pretrial Scheduling Order that was amended twice, but the deadline for amending the pleadings and filing dispositive motions, despite requests for alteration, remained the same. The deadline for amending the pleadings was May 1, 2001, and the deadline for filing dispositive motions was September 1, 2002.

On July 19, 2002, Plaintiff served Defendants with its Motion for Summary Judgment of Infringement of Plaintiff's U.S. Patent No. 5,686,896 (the '896 patent). (Doc. No. 20). Defendants were to respond to such motion by August 9, 2002. L.R. 7.1(b)(2)(B). Defendants did not file a response. Instead, on August 9, 2002, Defendants filed a Motion to Stay the Briefing Schedule for Plaintiff's Motion for Summary Judgment of Infringement Pending Resolution of Defendants' Motion for Summary Judgment of *Inventorship* of the '896 Patent. (Doc. No. 28) (emphasis added). Nothing came of Defendants' Motion for a Stay as Defendants did not, as they represented they would, file their summary judgment motion on inventorship by the dispositive motion deadline. Thus, Plaintiff submitted its motion for summary judgment of infringement of the '896 patent unopposed. The parties had a telephonic conference with the Honorable Judge David Doty regarding Plaintiff's unopposed summary judgment motion.

Meanwhile, Defendants cancelled the deposition of Plaintiff's claimed inventor, John Bergman, which was scheduled for the very last day of discovery, and Defendants were attempting to reschedule Mr. Bergman's deposition. Plaintiff refused since the period for discovery had terminated. Defendants moved this Court to compel Mr. Bergman's attendance at his deposition. Although untimely, this Court ordered Mr. Bergman's deposition to proceed. Interlogix, Inc. v. Honeywell, Inc. et al., No. 01-115, Order at 1 (D. Minn. Nov. 13, 2002). Mr. Bergman's deposition was taken sometime in December of 2002.

On January 24, 2003, Defendants filed a Cross-Motion for Summary Judgment of Patent *Invalidity* and Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement, (Doc. No. 71) (emphasis added), and submitted its memoranda on May 9, 2003. Thereafter, Plaintiff moved to Strike Defendants' Cross-Motion for Summary Judgment of Patent Invalidity and Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement.

## II. DISCUSSION

### A. Motion to Strike Cross-Motion for Summary Judgment of Patent Invalidity and Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement

Defendants' Cross-Motion for Summary Judgment of Patent Invalidity asserts invalidity defenses on the basis of 35 U.S.C. §§ 102(g) (prior inventorship) and 102(b) (on-sale bar).

In support of their motion to strike, Plaintiff argues, first and foremost, that Defendants never pled invalidity as an affirmative defense to infringement, did not seek leave of the Court to amend its pleading to assert invalidity, and, therefore, cannot usher this new issue into this case via a summary judgment motion. In addition, Plaintiff argues that Defendants' summary judgment motion is woefully untimely, and Defendants cannot show good cause to permit them to file the motion after the deadline for dispositive motions.

Defendants argue that their pleadings put Plaintiff on notice of a § 102(g) invalidity defense, and, therefore, they did not need to seek leave of the Court to amend their pleadings to assert § 102(g) invalidity as a defense. With regard to the § 102(b) defense, Defendants do not argue that they pled such defense, but they assert that they have good cause to amend the pleadings "based on the timing and importance of the Bergman deposition." (Def.s' Mem. in Opp'n, at 7). Thus, the reason Defendants waited until five months after the deadline to bring

their cross-motion for summary judgment appears to be that they needed to take Mr. Bergman's deposition. At the hearing on this matter, it appeared that Defendants also argued that they thought it proper to bring such motion only after the case did not settle.

For the reasons set forth below, the Court grants Plaintiff's motion to strike Defendants' Cross-Motion for Summary Judgment of Patent Invalidity and Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement. Due to Defendants' actions or omissions, intentional or not, Defendants' motion is uncorrectably plagued by procedural and substantive ills. There are three general issues raised by Defendants' Cross-Motion for Summary Judgment of Patent Invalidity and Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement in the current procedural posture: (1) the propriety of the motion as a procedural matter, (2) whether the invalidity defenses were pled, and (3) the propriety of the invalidity defenses as a procedural matter. Each issue will be addressed below.

**1. Propriety of the Motion as a Procedural Matter**

Defendants' motion was filed on January 24, 2003 or almost five months past the September 1, 2002 deadline for dispositive motions, and Defendant did not actually file its memorandum for its cross-motion and opposition until May 9, 2003. Defendants did not seek leave of Court to do so; they simply filed their motion.[2] Thus, summarily striking such motion as

---

[2] Defendants confusingly attempt to argue that a motion to modify the scheduling order would have been premature because the discovery motions that will be considered subsequently as part of this Order (Doc. Nos. 79 and 85), other discovery disputes, and a potential mediation session created "uncertainty as to the proper schedule." (Def.s' Mem. in Opp'n, at 11). These arguments are not persuasive. The only "proper" schedule was the April 17, 2002 Pretrial Scheduling Order, and the parties were to follow it. If a deadline had expired, plainly the parties were to seek leave.

untimely might be the appropriate remedy, Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608-09 (9th Cir. 1992); U.S. Dominator, Inc. v. Factory Ship, 768 F.2d 1099, 1104 (9th Cir. 1985) superceded in part on other grounds by Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1174 (9th Cir. 1996), but this Court will test the appropriateness of Defendants' motion by the good cause standard under the assumption that Defendants seek leave to file their cross-motion for summary judgment.

Where, as here, the deadline for filing dispositive motions has long since expired, the propriety of a motion for leave to file a dispositive motion is considered under Federal Rule of Civil Procedure 16(b). E.g., Eischeid v. Dover Const., Inc., No. 00-4100, 2003 WL 22001192, at *4 (N.D. Iowa Aug. 25, 2003); Anderson v. City of Dallas, 210 F.R.D. 579, 580-81 (N.D. Tex. 2002); c.f. Luigino's, Inc. v. Pezrow Companies, 178 F.R.D. 523, 525 (D. Minn. 1998). As the Eighth Circuit has pointedly stated:

> It is true that the Federal Rules are usually liberally construed to . . . control the pace of litigation. As regards case management orders, however, the Federal Rules set a less forgiving standard. Federal Rule of Civil Procedure 16(b) specifies that such an order "shall not be modified except upon a showing of good cause and by leave of the district judge [or magistrate judge]." Thus, a moving party must first make the requisite showing. *Even then* the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them.

Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) (emphasis added) (citations omitted).

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." Bradford, 249 F.3d at 809 (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992)). In addition, "the

existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion," Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992); accord Bradford, 249 F.3d at 809. However, "[i]f that party was not diligent, the inquiry should end." Johnson, 975 F.2d at 609; accord Bradford, 249 F.3d at 809.

Defendants were not diligent in filing their cross-motion for summary judgment, and, therefore, they have not shown good cause to amend the dispositive motion deadline to file such motion. Defendants argue, at least with regard to the § 102(b) defense,[3] that they needed to take Mr. Bergman's deposition because it "was necessary to a full analysis of Honeywell's § 102(b) defense, and more particularly its entitlement to summary judgment on that defense." (Def.s' Mem. in Opp'n, at 9). This argument, as a means of showing good cause and diligence, is wholly unpersuasive. Plainly, Mr. Bergman's deposition was not necessary to filing the cross-motion for summary judgment. As Defendants admit, the § 102(b) portion of the cross-motion "is based on *Honeywell's* pre-critical date offers for sale of the pre-low battery feature to Interlogix." (Def.s' Mem. in Opp'n, at 7) (emphasis added). Even a cursory review of Defendants' cross-motion for summary judgment on the § 102(b) defense, reveals that almost all

[3] Defendants do not argue in their memorandum in opposition that Mr. Bergman's deposition was the reason that they could not timely file the § 102(g) portion of the cross-motion. Actually, saying that Defendants argue that the importance of Mr. Bergman's deposition caused them not to timely file their cross-motion on the § 102(b) defense, is generous. Defendants do make this statement in their memorandum, but nowhere do Defendants actually explain why Mr. Bergman's deposition was necessary (other than to say Mr. Bergman received one of the alleged offers for sale that *Defendants* sent). Rather, Defendants conclude Mr. Bergman's deposition was important and then argue that Plaintiff will not suffer any prejudice as a result of the insertion of the § 102(b) defense, which, of course, is irrelevant. Archer Daniels Midland Co. v. Aon Risk Serv., Inc., 187 F.R.D. 578, 581-82 (D. Minn. 1999) ("Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party.").

of the factual support for such motion is, as Defendants admit, based on documents that Defendants had in their possession before this litigation even began (their own 1994 alleged offer for sale) or statements from current or former employees of Defendants. Thus, Defendants could have quite easily brought their cross-motion prior to the deadline for dispositive motions. Indeed, it can hardly be said that Defendants could not have reasonably met the dispositive motion deadline despite their exercise of diligence. Johnson, 975 F.2d at 609 (explaining that a pretrial scheduling order may be modified "'if it cannot reasonably be met despite the diligence of the party seeking the extension'") (quoting Federal Rule of Civil Procedure 16 advisory committee notes (1983 amendments)); accord Archer Daniels Midland Co. v. Aon Risk Serv., Inc., 187 F.R.D. 578, 581-82 (D. Minn. 1999).

The same is true for the § 102(g) portion of Defendants' cross-motion. In order to support their arguments that they were the first to conceive of the invention, reduce the invention to practice, and did not abandon, suppress, or conceal the invention, Defendants rely almost exclusively on their own documents or statements of their own employees or former employees. (Def.s' Mem. in Opp'n to Pl.'s Mot. for Summ. J. of Infringement and in Supp. of Def.s' Cross-Mot. for Summ. J. of Patent Invalidity, at 10-14). Defendants also rely on an interrogatory response that they received from Plaintiff on or about June 3, 2002 or well before the dispositive motion deadline. Id. at 11, 12. Mr. Bergman's name is mentioned in only two sentences and his supposed necessary deposition testimony was only cited once, and of questionable relevance, in Defendants' cross-motion on the § 102(g) issue. Id. at 10-14. The inescapable conclusion is that Mr. Bergman's deposition was not what was holding up Defendants' cross-motion for summary judgment on patent invalidity. Rather, reliance on the necessity of Mr. Bergman's deposition to

show good cause is simply one of the "litany of lame excuses, inclusive of inadvertence and neglect, which commonly undergird an untimely Motion." Archer Daniels, 187 F.R.D. at 582.

Defendants' counsel have latched on to this excuse in their role as advocates, but what appears to be the real reason that Defendants did not file their cross-motion for summary judgment was explained at the hearing on this matter. Defendants' counsel explained:

> Every strategic decision that was made, I believe, in the patent case and every motion that you're going to hear today, reflects the fact that the patent case was litigated with this understanding in mind–that is, that the patent case would eventually be settled. Would be settled in conjunction or separate from the other claims that are at issue.

Later, the following exchange occurred:

> Defense Counsel: Now why wasn't Honeywell eager to get those motions for summary judgment on file? Cause Honeywell believed that the patent case was going to be settled. It was going to be settled for mutual cross-licenses. And it didn't make any sense [inaudible] to try to invalidate a patent that it believed it rightfully owned, number one, and, number two, that it was going to get possession of through these cross-licenses as a result of the settlement. Honeywell waited until the very last moment when it had no other option but to go ahead and file this § 102(g) motion for summary judgment.
>
> Court: Why didn't you seek leave of the court?
>
> Defense Counsel: Your Honor, we didn't think at that point in time with the situation resulting from the conference with Judge Doty. . .
>
> Court: Did Judge Doty say you could, if I talked with him, would he say you could . . .
>
> Defense Counsel: No.
>
> Court: . . . file a late summary judgment motion?
>
> Defense Counsel: I am not going to represent that or not. He instructed the parties at the end of that meeting or at the end of that hearing, he instructed the Plaintiffs to get back to him with any issues that they believed were outstanding. He also instructed the Defendants to do the same. Nothing happened. What happened

was that we moved for summary judgment.

The fact that Defendants thought the parties were going to settle the patent related issues certainly offers no excuse for not filing a dispositive motion within the deadline. Settlement, of course, is encouraged, but foregoing filing motions in the hope or expectation that one's adversary will maintain its willingness to capitulate or have an amicable change of heart is not diligence. Defendants waited long beyond the last minute to file their cross-motion for summary judgment on patent invalidity and have likewise fallen far short of showing good cause for amending the Pretrial Scheduling Order. As one court has said regarding the flouting of court imposed deadlines:

> [D]elays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.

Geiserman v. MacDonald, 893 F.2d 787, 792 (5th Cir. 1990); accord e.g., Kramer v. Boeing Co., 126 F.R.D. 690, 697 (D. Minn. 1989); Archer Daniels, 187 F.R.D. at 582.

Accordingly, this Court will enforce the Pretrial Scheduling Order. Defendants' Cross-Motion for Summary Judgment of Patent Invalidity and Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement is stricken.

The Court notes that both the Cross-Motion for Summary Judgment of Patent Invalidity and the Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement shall be stricken. Although entitled "Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement" and thus only formally a responsive memorandum to Plaintiff's motion, the opposition *is* the cross-motion for invalidity. Neither the cross-motion nor the opposition contain

any discernable argument about non-infringement that does not rely on invalidity under §§ 102(g) or 102(b). In any event, for the reasons stated above, *infra* Part II(A)(2) and (3), and because the "response" was delivered approximately nine months late, the opposition memorandum should be stricken pursuant to this Court's discretionary powers. L.R. 7.1(d) ("In the event a party fails to timely deliver and serve a memorandum of law, the Court may strike the hearing from its motion calendar, continue the hearing, refuse to permit oral argument by the party not filing the required statement, consider the matter submitted without oral argument, allow reasonable attorney's fees, *or proceed in such other manner as the Court deems appropriate*.") (emphasis added).

**2. Whether Invalidity Was Pled**

Defendants did not plead the affirmative defenses of §§ 102(g) or 102(b). 35 U.S.C. § 282 is the corollary to Federal Rule of Civil Procedure 8(c) and provides in pertinent part:

> The following shall be defenses in any action involving the validity or infringement of a patent and *shall be pleaded*:
> **(1)** Noninfringement, absence of liability for infringement or unenforceability,
> **(2)** *Invalidity* of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability,
> **(3)** Invalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title,
> **(4)** Any other fact or act made a defense by this title.

(Emphasis added). See generally 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 1271, 1251 (2d ed. 1990).

Thus, "the defense of invalidity is an affirmative defense" that must be specifically pled. Cornwall v. U.S. Const. Mfg., Inc., 800 F.2d 250, 252 (Fed. Cir. 1986). Merely denying that a patent was duly and legally issued is insufficient. Id.

No where in any of Defendants' pleadings, let alone in Defendants' answer to Plaintiff's counterclaim for infringement (Doc. No. 9), do they cite to any affirmative defense in 35 U.S.C. § 102 or even use the words invalid or invalidity. "[A]t the least, [Defendants] must make an allegation of invalidity." Samsung Elec. Co. v. Texas Instruments, Inc., No. 96-0001, 1996 WL 343330, at *4 (N.D. Tex. Apr. 18, 1996). In Samsung, Samsung had requested in its Prayer for relief that "[t]he Court enter judgment declaring that the TI Group 1 and TI Group 2 Patents are invalid," yet the Court still held that "[a]lthough Samsung names the patents at issue, it does not affirmatively state that they are invalid, or identify the grounds upon which the Court should find them invalid." Id. at 3-4. Thus, the Court ordered Samsung to replead invalidity to include "these basic elements." Id. at 4. Here, Defendants simply do not allege invalidity as an affirmative defense, and, as discussed below, this was an intentional decision.

Nonetheless, Defendants submit that they put Plaintiff on notice that they were asserting § 102(g) (prior inventor) as an affirmative defense by alleging that Paul Johnson, Defendant's employee, was the "true" or "sole" inventor of the low battery feature claimed in the '896 patent, and that Mr. Johnson invented the low battery feature prior to Defendants' business venture with Plaintiff wherein Defendant disclosed the technical specification of the low battery feature to Plaintiff. Defendants' argument is belied by its pleadings and its expressed strategy in this litigation.

Defendants base their fair notice argument on the allegations in its *Counterclaim* pleading (Doc. No. 5). (Def.s' Mem. in Opp'n, at 3).[4] These allegations could not have put Plaintiff on

[4] The sequence of pleadings was as follows: (1) Plaintiff's complaint; (2) Defendants' answer and counterclaim (for correction and infringement); (3) Plaintiff's answer to Defendants'

notice of a § 102(g) invalidity defense because at that point no claim of infringement had been made against Defendants.[5] See Trovan Ltd. v. Irori, 243 F.3d 559, 2000 WL 1285243, at *6 (Fed. Cir. 2000) (table) (holding that the district court did not abuse its discretion in excluding evidence on invalidity under §§ 102 and 103 where the plaintiff argued that "the specific defenses were untimely submitted after the close of discovery" and the defendant argued that "because it had counterclaimed from the beginning, its evidentiary profers were timely").[6] Once Plaintiff responded with its own counterclaim of infringement of the '896 patent (Doc. No. 8), Defendants generically denied the allegations. As noted, merely denying that a patent was duly and legally issued is insufficient. Cornwall, 800 F.2d at 252.

Defendants' pleadings make clear that they are only litigating the ownership/inventorship of the '896 patent under 35 U.S.C. § 256. For instance, Defendants' counterclaim is entitled, bolded, and underlined "Counterclaim for Correction of Inventorship, Patent Infringement and Declaratory Relief," and states in the first paragraph that "[t]his is an action under the patent laws of the United States . . . for correction of inventorship of two patents." (Def.s' Countercl. p. 12, ¶1) (Doc. No. 5). The first two counts (Count II addressing the '896 patent) specifically request "an Order Correcting the Inventorship." Id. at p. 12, 14. Count II specifically requests that the

---

counterclaim and Plaintiff's own counterclaim (for correction and infringement); and (4) Defendants' answer to Plaintiff's counterclaim.

[5] Moreover, as explained below, Defendants' Counterclaim was only for correction of inventorship under 35 U.S.C. § 256, and as one federal district court has observed, "Congress has conferred no jurisdiction on the federal courts to adjudicate a patent's validity [based on a § 282 defense] in a Section 256 action to correct inventorship." Oregon Health and Science Univ. v. Vertex Pharm., Inc., 233 F.Supp.2d 1282, 1285 (D. Or. 2002).

[6] The Court does note that it is somewhat unclear what actually occurred in Trovan.

inventorship and ownership of the '896 patent be corrected to identify Defendants' employee as the inventor and Defendant as the owner of the patent. (Countercl. ¶18-19). The prayer for relief seeks the same. Id. ¶F-G. Thus, all that Defendants' Counterclaim (Doc. No. 5) gave Plaintiff fair notice of was that Defendants thought they owned the '896 patent, it was valid, and Plaintiff was infringing on it. Defendants' Answer (Doc. No. 9) to *Plaintiff's* Counterclaim (Doc. No. 8) did not change the absence of the § 102(g) invalidity defense. Rather, in the portion of Defendants' Answer entitled "Defenses," Defendants included four named defenses to Plaintiff's allegation that Defendants were infringing the '896 patent, but Defendants specifically *excluded* the simple sentence: "The '896 patent is invalid" (or any other indication of reliance on invalidity as an affirmative defense). (Def.s' Answer to Pl.'s Countercl., at ¶19-22).

As mentioned, Defendants' omission of invalidity was intentional. Defendants' theory was that they owned the '896 patent, it was valid, and Plaintiff was infringing on it. Moreover, Defendants thought the patent claims were peripheral to the other claims in the case. As defense counsel stated:

> Cause Honeywell believed that the patent case was going to be settled. It was going to be settled for mutual cross-licenses. And it didn't make any sense [inaudible] to try to invalidate a patent that it believed it rightfully owned, number one, and, number two, that it was going to get possession of through these cross-licenses as a result of the settlement.

Thus, according to defense counsel:

> Every strategic decision that was made, I believe, in the patent case and every motion that your going to hear today, reflects the fact that the patent case was litigated with this understanding in mind–that is, that the patent case would eventually be settled. Would be settled in conjunction or separate from the other claims that are at issue.

Accordingly, it is no surprise that Defendants omitted invalidity as an affirmative defense from

their Answer (Doc. No. 9). In addition, Defendants do not even argue, nor could they in good faith, that they pled the § 102(b) (on sale bar) invalidity defense. Thus, this Court holds that the Defendants did not plead invalidity under 35 U.S.C. §§ 102(g) and 102(b) as an affirmative defense to Plaintiff's claim that Defendants are infringing the '896 patent.

### 3. Propriety of the Invalidity Defenses as a Procedural Matter

Two intertwined issues remain regarding the propriety of the invalidity defenses as a procedural matter. First, 35 U.S.C. § 282 states that the defense of invalidity "shall be pleaded." Thus, at this stage, in order to plead their §§ 102(g) and (b) invalidity defenses, Defendants must seek leave of the Court to amend their Answer (Doc. No. 9). Defendants stated in their memoranda in opposition and at the hearing on this issue that, if "technically" necessary, they seek a modification of this Court's Pretrial Scheduling Order to amend to plead the two invalidity defenses. This Court's Pretrial Scheduling Order is not a technicality. Indeed, "[a] magistrate judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" Archer Daniels, 187 F.R.D. at 582 (quoting Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985)). The deadline for amending the pleadings expired nearly two and a half years ago–May 1, 2001. As noted supra Part II(A)(1), where the deadline for amending the pleadings has expired, a party must show good cause to do so, and good cause is measured by a party's diligence in meeting the deadlines set. Here, Defendants could not show good cause to amend its pleadings even if their request was one day tardy. As explained supra Part II(A)(2), Defendants' *proposed summary judgment motion* was based almost exclusively on their *own documents*. Thus, from the infancy of this case, Defendants could have simply pleaded the invalidity defenses, and plainly cannot

demonstrate that complying with the deadline was not reasonably possible despite their diligence. This should end the matter, yet an additional wrinkle remains.

As a general rule "failure to plead . . . an affirmative defense results in a waiver of that defense and its exclusion from the case." Sayre v. Musicland Group, Inc., 850 F.2d 350, 354 (8th Cir. 1988); accord, e.g., 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1278, n.1 (2d ed. 1990) (collecting cases). Although not directly argued by the parties, courts have allowed the insertion of an unpled affirmative defense in a summary judgment motion and sometimes without requiring the answer to be amended. 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1278, n.23 (2d ed. 1990) (collecting cases). In such instances, courts have focused on the absence of prejudice to the opposing party as well as bad faith, delay, and other factors. The Eighth Circuit has considered cases in the context of allowing the insertion of an unpled affirmative defense in a summary judgment motion. Stoebner v. Parry, Murray, Ward & Moxley, 91 F.3d 1091, 1093-94 (8th Cir. 1996); Winters v. Mitchell, 89 F.3d 842 (8th Cir. 1996) (per curiam) (table); Sanders v. Dep't of Army, 981 F.2d 990, 991 (8th Cir. 1992) (per curiam). In these cases, the Eighth Circuit does not necessarily require that the pleadings be amended before an unpled affirmative defense is inserted in a dispositive motion. These cases also do not discuss the propriety of adding an unpled affirmative defense in a summary judgment motion where the deadline for amending pleadings, not to mention filing dispositive motions, has expired. See FED. R. CIV. P. 16. The reason for this may be varied. For example, in Sanders, the government's motion to dismiss, which asserted an unpled affirmative defense, was filed only two months after the government filed its answer, which suggests that the deadline for amending the pleadings likely had not expired and it appeared allowance of the

amendment was a foregone conclusion. 981 F.2d at 991 (explaining that "[i]t was not necessary for the district court to require the meaningless formality of an amended answer").[7] In Stoebner, the bankruptcy court allowed the affirmative defense to enter the case by permitting the defendant to *amend its answer* and then consider the summary judgment motion. 91 F.3d at 1093 ("Although Parry, Murray failed to plead the affirmative defense of collateral estoppel in its answer, the bankruptcy court construed Parry, Murray's summary judgment motion as one to amend its answer to add the estoppel defense and expressly allowed the amended answer.").

In any event, the Eighth Circuit has taken a quite different path in enforcing Pretrial Scheduling Orders and the deadlines therein (e.g., amending the pleadings) in more recent cases such as Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) and In re Milk Prod. Antitrust Litigation, 195 F.3d 430, 437-38 (8th Cir. 1999). The Eighth Circuit explained that "[w]hen the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order." 195 F.3d at 437. Moreover, "[a]s a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them." 249 F.3d at 809. Whatever was "meaningless" about amending the answer in Sanders, 981 F.2d at 991, in the context of this case, leave to amend the answer, after the deadline to amend and file dispositive motions has *long* expired, to assert two brand new affirmative defenses based on invalidity of a patent, substantially altering the theory, scope,

---

[7] In Sanders, there was also an issue of whether the statute of limitations defense was even an affirmative defense or a jurisdictional prerequisite or whether the statute of limitations defense was subsumed in the already pled failure to state a claim defense.

complexity, and schedule of the case, is not meaningless. Moreover, 35 U.S.C. § 282 states the requirements in clear, plain language, and it means what it says; that is, the defense of invalidity "shall be pleaded." The requirement of pleading invalidity as an affirmative defense, that is including it in the answer, seems of particular importance in patent law as Congress thought it important to provide a specific statute commanding such requirement. As two venerable commentators explain, "In what appears to be the only instance to date of Congressional legislation on a procedural matter governed by the federal rules, the 1952 revision of the Patent Act makes invalidity and noninfringement of a patent affirmative defenses and provides for the manner in which they must be raised." 5 WRIGHT & MILLER, § 1271, at 438-39.

The advantages to requiring leave to amend the answer prior to asserting an unpled affirmative defense in a summary judgment motion were pointedly explained, although in connection with Rule 15 amendments, by the District of Columbia Circuit, and this Court quotes it at length:

> We recognize that, rather than requiring amendment under Rule 15(a), some circuits permit parties to raise affirmative defenses for the first time in dispositive motions where no prejudice is shown. This approach subtly alters the structure dictated by Rules 8(c) and 15(a) in two ways. First, it apparently relieves the moving party of the need to request amendment, and the District Court of the need to state and explain its grant of leave to amend, so long as the opposing party does not show prejudice. This change allows parties to omit affirmative defenses in pleadings strategically, in violation of the notice purpose. It will often prove difficult for a party to support a claim of prejudice in circumstances involving only inconvenience or surprise. And, by the time the opposing party raises the prejudice claim, a strategic advantage may already have been gained by the party who failed to amend its pleading. By contrast, if the District Court systematically follows the procedural structure required by Rules 8(c) and 15(a) it can conduct its own inquiry in every case into the circumstances of the delay, and need not rely solely on a convincing showing of prejudice by one party. It likely will articulate the basis for the amendment, and will not simply approve it as a matter of course.

> Second, automatically permitting late raising of affirmative defenses where no prejudice has occurred reduces the multifarious reasons for denying leave to amend envisioned by the Court in Foman to the single, non-exhaustive factor of prejudice. . . . Strategic or merely lazy circumventions of a legal process grounded in a sound policy have the effect of eroding the regularized, rational character of litigation to the detriment of practitioners and clients alike.
> When an opposing party does receive notice of a previously unpled defense when a dispositive motion is filed, it lacks the advance notice required by Rule 8(c) that would have enabled it to develop factual and legal defenses fully. Although an opposing party may introduce affidavits in response to a motion for summary judgment . . . as Appellant did in this case, affidavits will not always suffice to provide adequate evidence for the defenses proposed. Frequently, mounting a proper defense will necessitate further discovery, which may not be possible in the time allotted to respond to the motion. Rule 15(a) authorizes the District Court to allow amendment, but this does not mean it would be unduly formalistic for the District Court to deny amendment to a strategic litigant who intentionally neglected to plead a defense. To the contrary, denying leave to amend to such a litigant would serve, not impede, the interests of substantive justice.

Harris v. Sec'y, United States Dep't of Veterans Affairs, 126 F.3d 339, 344-45 (D.C. Cir. 1997) (citations omitted); see also Red Deer v. Cherokee County, 183 F.R.D. 642, 654 (N.D. Iowa 1999).

This rationale is only enhanced when the deadline for amending the pleadings in the Pretrial Scheduling Order have expired, and in this case the deadlines expired almost two and a half years ago.[8] See In re Milk Prod. Antitrust Litigation, 195 F.3d 430, 437-38 (8th Cir. 1999) ("If we considered only Rule 15(a) without regard to Rule 16(b) we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").

---

[8] Indeed, "automatically permitting late raising of affirmative defenses where no prejudice has occurred," Harris, 126 F.3d at 345, would significantly erode, if not eliminate, the inquiry into diligence mandated by Rule 16(b) and the importance with which district courts rely on scheduling orders.

Thus, this Court finds, because it is required by the Federal Rules of Civil Procedure, supported by the purposes of the Rules, and is the direction in which the Eighth Circuit has pointed this Court, that Defendants must seek leave to amend their pleadings before asserting an unpled affirmative defense in their summary judgment motion. Here, as previously explained, the deadline for amending the pleadings has expired, and Defendants cannot show good cause to amend their pleadings and assert the §§ 102(g) and 102(b) affirmative defenses.

Alternatively, additional reasons, beyond failure to show good cause, support rejection of the defenses in the summary judgment motion: Plaintiff would be unfairly prejudiced, Defendants unreasonably delayed in asserting the defenses, and Defendants strategically omitted the affirmative defenses. If the §§ 102(g) and 102(b) defenses become part of this case, Plaintiff will be required to defend against two defenses that are distinct from the existing § 256 claims. Additional discovery clearly will be necessary on new defenses that change the theory and scope of the case. Non-expert deposition discovery closed on May 10, 2002, and fact discovery closed on June 1, 2002.

Defendants argue that their June 1, 2002 interrogatory response put Plaintiff on notice that Defendants claimed the '896 patent was invalid. As Plaintiff points out, this argument is misleading. Discovery closed on June 1, 2002, and the deadline for amending pleadings closed on May 1, 2001. Nothing short of surprise was the result of Defendants' interrogatory response on the day discovery closed. Moreover, Defendants did not even raise, and have never sought to include in their pleadings, the § 102(b) defense until a November 13, 2002 conference. By November 13, 2002, however, every deadline in the April 17, 2002 Pretrial Scheduling Order had expired. Again, nothing short of surprise and prejudice was the result of this revelation.

Defendants also argue that Plaintiff would suffer no prejudice because Plaintiff has already conducted discovery on the §§ 102(g) and 102(b) defenses. This is not so. Plaintiff's discovery largely focused on inventorship/ownership issues under § 256 (the only issue firmly in the case), which happens to be related but legally distinct from the § 102(g) issue. See Bd. of Educ. v. Am. Bioscience, Inc., 333 F.3d 1330, 1337-38 (Fed. Cir. 2003) ("Conception is 'the touchstone of inventorship,' and each joint inventor must generally contribute to the conception of the invention. 'Conception' is the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.' An idea is sufficiently 'definite and permanent' when 'only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.'") (citations omitted). In addition, with regard to the § 102(b) issue, Plaintiff explains that it took no depositions of the alleged authors of the price quotation letters or the other witnesses cited in support of the new defense. To the extent that Plaintiff did conduct some discovery related to these unpled issues, such discovery did not fully explore these issues that represented a shift in the theory of the case. See Sayre, 850 F.2d at 355 (rejecting the argument that no prejudice would be suffered "because the topic had been raised during the two depositions, and again during the minitrial" as "the two depositions only touched briefly on the mitigation issue and did not explore it fully").

In addition, the prejudice to Plaintiff is already apparent. As the District of Columbia Circuit explained, "by the time the opposing party raises the prejudice claim, a strategic advantage may already have been gained by the party who failed to amend its pleading." Springing these significant defenses so late, after discovery has closed, has had its strategic

effect–indeed, at least one of the discovery motions considered *infra* is the result of the new defenses. Harris, 126 F.3d at 344. In reality, "[t]he opposing party may be prejudiced even where it had *de facto* notice of the defense, even though not pleaded, because 'it is not the plaintiff's responsibility to clarify the [defendant's] pleadings' or to act on the assumption that the defense will eventually be properly asserted." Swanson v. Van Otterloo, 177 F.R.D. 645, 650 (N.D. Iowa 1998) (quoting Toth v. Glazer, 163 F.R.D. 549, 550 (E.D. Wis. 1995).

It is also not an insignificant part of the analysis that Defendants waited literally until all of the Pretrial Scheduling deadlines had expired to assert these new defenses. E.g., Tenneco Resins, Inc. v. Reeves Bros., Inc., 752 F.2d 630, 634 (Fed. Cir. 1985) (explaining, in rejecting the late addition of an invalidity defense, that "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend."). Such delay cannot be countenanced. Moreover, it was Defendants' admitted strategy from the beginning that the patent issues would settle and it did not want to invalidate the patents because Defendants thought they owned the patent and Plaintiff was infringing. When things went sour and the patent claims did not settle, Defendants changed their theory, and to Plaintiff's prejudice. In addition, forcing the Court to delay trial, disrupting its calendar, is additional prejudice. Swanson, 177 F.R.D. at 650 ("Prejudice, in this context, generally includes reopening discovery or forcing the court to continue the trial.") (collecting cases).

Finally, Defendants' argument that the Court should not allow Plaintiff to assert infringement without facing invalidity defenses is unpersuasive. The Federal Circuit has dealt with a similar argument as follows:

> We note, however, that, if the "purpose" of a pleading is to facilitate consideration

> of matters on the merits, then Tenneco, and not the court, has violated that principle. Tenneco failed to place the validity of the '573 patent in issue, thus preventing a consideration of the matter. That decision was Tenneco's, and Tenneco's alone. Justice does not here require that Tenneco be permitted to by-pass its inordinate and unexplained delay which has prejudiced both Reeves and the district court.

Tenneco, 752 F.2d at 635 (footnote omitted).

This Court agrees. It was Defendants' decision, and a strategic one, not to plead invalidity. Harris, 126 F.3d at 345 ("[It is not] unduly formalistic for the District Court to deny amendment to a strategic litigant who intentionally neglected to plead a defense. To the contrary, denying leave to amend to such a litigant would serve, not impede, the interests of substantive justice.").

#### 4. Conclusion

Defendants have not shown good cause to file a dispositive motion past the deadline in the Pretrial Scheduling Order. Defendants' Cross-Motion for Summary Judgment of Patent Invalidity and Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement (Doc. No. 71, 83, 84) is therefore stricken. Plaintiff's Motion for Summary Judgment of Infringement of the Plaintiff's U.S. Patent No. 5,686,896 shall be considered by the Court unopposed. Defendants did not plead affirmative defenses under 35 U.S.C. §§ 102(g) and 102(b). Defendants have not shown good cause to amend their pleadings. Plaintiffs and the court would be prejudiced by the late insertion of the §§ 102(g) and 102(b) defenses in this case. Therefore, the §§ 102(g) and 102(b) defenses shall be excluded from this case.

### B. Motion to Strike Plaintiff's Third "Supplemental" Responses to Defendants's Second Set of Interrogatories

In February of 2003, Plaintiff corrected or changed its answer to interrogatory number two of Defendants' second set of interrogatories regarding when Plaintiff reduced to practice the

'896 patent. Plaintiff did so as a result of Mr. Bergman's December of 2002 deposition testimony. The date provided by Mr. Bergman is different from the initial answer to interrogatory number two and more favorable to Plaintiff. Defendant objected. The Court need not resolve this dispute because it is moot.

Both parties, and the Court, agree that if this Court grants Plaintiff's Motion to Strike Defendants' Cross-Motion for Summary Judgment of Patent Invalidity and Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement, then this motion is moot because reduction to practice will be irrelevant. In supra Part II(A), this Court did so, and the § 102(g) defense is excluded from this case. Therefore, the Court denies as moot Defendants' Motion to Strike Plaintiff's Third "Supplemental" Responses to Defendants's Second Set of Interrogatories. The Court does not envision interrogatory number two being used by Plaintiff at any stage in this litigation.

### C. Motion to Require Supplementation of Discovery Responses

By this motion, Plaintiff requests that Defendants be required to supplement their discovery responses related to damages (financial and marketing information). Specifically, Plaintiff explains that it served interrogatories and document requests related to Defendants' sales, revenues, profits, and production of the allegedly infringing product. Likewise, Plaintiff explains that it served interrogatories and document requests related to promotional literature, documents regarding the demand for the pre-low battery feature, and other documents. Plaintiff asserts that Defendants agreed to provide this information but have either not done so, provided incomplete information, or provided incorrect information. Plaintiff argues that Defendants have a continuing obligation under Federal Rule of Civil Procedure 26(e)(2) to supplement their

discovery. As evidence of Defendants' failure to supplement, Plaintiff explains that Defendants Ademco and ADI have never provided any financial information related to their sales, revenues, or profits data. In addition, Plaintiff explains that marketing information is incomplete or incorrect as Plaintiff has been able to find additional marketing information concerning the pre-low battery feature on Defendants' website.

Defendants vigorously oppose Plaintiff's motion by arguing that it is not a motion to supplement, but an untimely motion to compel. Defendants argue that "[i]f Interlogix thought Honeywell's interrogatory responses or document production were incomplete or insufficient, it had to move to compel by August 5, 2002 [the date in the Pretrial Scheduling Order]." (Def.s' Mem. in Opp'n, at 2). Defendants assert that since Plaintiff did not move to compel within the time allowed for such motions, Plaintiff's motion is untimely. Nevertheless, Defendants admitted at the hearing on this matter that they have a duty to supplement their productions and responses.

In deciding this motion, this Court is not deciding any objections to complying with discovery requests. Thus, this motion does not come within the purview of Local Rule 37.1 that provides in relevant part that "[a]ny motions presenting *discovery disputes* shall be served and filed prior to the discovery termination date established pursuant to LR 16." (Emphasis added). Here, Defendants admitted at the hearing that "[i]n this case there was no dispute" about the production of documents. Pursuant to Local Rule 16 and Federal Rule of Civil Procedure 16, the Pretrial Scheduling Order provides for discovery termination and discovery dispute motion practice. The deadlines in the Pretrial Scheduling Order, however, are not implicated by this motion because there is no discovery dispute and barring this motion as past the deadline for

discovery related motion practice would violate the purpose and plain language of Federal Rule of Civil Procedure 26(e).

This Court's Pretrial Scheduling Order contemplates setting deadlines for non-dispositive motions and specifically discovery motions. In doing so, the Court contemplates discovery related non-dispositive motions being those presenting disputes about complying with discovery requests. Thus, the Court typically sets a deadline for such motions slightly after the deadline for discovery itself because after discovery is closed actual discovery disputes should not arise. The present motion is not contemplated by the discovery motion deadline because there is no dispute. Moreover, the purpose of Rule 26(e)(2) is to provide the parties with supplemental information at the least up to the trial and arguably throughout the duration of the case. See Allen v. Bake-Line Prod., Inc., No. 98-1119, 2001 WL 883693, at *1 (N.D. Ill. Aug. 6, 2001) ("Pursuant to Federal Rule of Civil Procedure (Rule) 26(e)(2), a party has a duty to supplement its discovery *throughout* litigation.") (emphasis added). Moreover, the language of the rule permits no other interpretation. That the rule clearly imposes this important obligation would provide no dependable solace to litigants if they could not seek to force an unwilling adversary, that had not previously objected to the requests, to supplement. This Court will not interpret its Local Rules, the Pretrial Scheduling Order, or the Federal Rules of Civil Procedure to preclude a true motion for supplementation in this circumstance as "[i]t would clearly defeat the purpose [and language] of Rule 26(e) if the duty of supplementation did not survive the close of discovery." Marianjoy Rehab. Hosp. v. Williams Elec. Games, Inc., No. 94-4918, 1996 WL 411395, at *3 (N.D. Ill. July 19, 1996).

The Court emphasizes that Defendants agreed, subject to boilerplate objections noted

below, to produce the relevant documents and answer the relevant interrogatories. Thus, Defendants have an affirmative duty to supplement their responses despite Plaintiff's apparent abandonment of certain damages theories. In fact, this appears to be Defendants' real gripe. This Court previously struck the portion of Plaintiff's expert report dealing with entitlement to lost profits. Interlogix, Inc. v. Honeywell, Inc. et al., No. 01-115 (D. Minn. Jan. 9, 2003). Defendants explained at the hearing that Plaintiff is simply now trying to re-work its damages theory. This may be so, but Defendants agreed in large part to produce damages related documents and the affirmative duty to supplement those productions does not dissipate because Defendants believe Plaintiff has abandoned a particular damages theory.

Subject to boilerplate objections, Defendants did agree to produce the documents that Plaintiff requested and answer the interrogatories that Plaintiff served. A sample of a typical request regarding financial documents by Plaintiff and response by Defendants is outlined below:

> Document Request No. 29:
> All documents referring or relating to annual, quarterly, and monthly documents from October 1, 1997 to the present from which the following may be determined for sales of smoke detectors incorporating the '896 patent:
> a. Gross revenues;
> b. Discounts;
> c. Net Revenues;
> d. Costs of goods sold;
> e. Gross Profit;
> f. Operating expenses;
> g. Operating profit;
> h. Net profit;
> i. Allocated overhead expenses and/or other allocated expenses; and
> j. Other sales, general, and administrative expenses.
>
> Response:
> Defendants object to this request on the grounds that it is vague and ambiguous in seeking "documents referring or relating to annual, quarterly, and monthly documents," and the request is overbroad and unduly burdensome as

> well. Subject to and without waiving the foregoing objections, *Defendants have produced or will produce documents responsive to this request.*

(Gupta Decl. Ex. B) (emphasis added).

A sample of a typical request regarding marketing/promotional documents by Plaintiff and response by Defendants is outlined below:

> Request No. 39:
> All documents concerning your use, disclosure, exhibition, or demonstration of the invention claimed in the '896 patent.
>
> Response:
> Subject to and without waiving the foregoing objections, Defendants have produced or will produce documents responsive to this request.

Id.

Federal Rule of Civil Procedure 26(e)(2) provides:

> A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

The duty to supplement is an affirmative duty resting with the parties. It is a particularly important duty bearing on a resolution of the merits with all available evidence, not just that which happened to be available during the discovery period or that which the producing party happened to unearth in its initial search for information responsive to requests. In this regard, the affirmative duty to supplement neither requires a request from one's adversary nor an order from the Court, and such duty does not expire upon the close of discovery.[9] Allen, 2001 WL 883693,

[9] In this regard, Defendants must supplement their responses on their own accord without the prodding of Plaintiff. Failure to do so, of course, risks the peril of the full family of sanctions provided by Rule 37(c).

at *1 ("The duty to supplement discovery requests lingers on without solicitation by the requesting party."); Pizza Pub. Co. v. Tricon Global Restaurants, Inc., 2000 WL 1457010, at *1 (S.D.N.Y. Sept. 29, 2000) ("The rule [26(e)(2)], on its face, makes no distinction between information–including documents–acquired prior to and after the conclusion of fact discovery (or indeed of any discovery."); Marianjoy Rehab. Hosp. v. Williams Elec. Games, Inc., 1996 WL 411395, at *3 (N.D. Ill. July 19, 1996) ("It would clearly defeat the purpose of Rule 26(e) if the duty of supplementation did not survive the close of discovery."); see also L. Tarango Trucking v. County of Contra Costa, 202 F.R.D. 614, 623 (N.D. Cal. 2001) (ordering the supplementation of documents after the close of discovery).

Defendants' position regarding its duty is contradictory. At the hearing on this matter, Defendants agreed that they have a duty to update their financial productions. At another point, however, Defendants argued that Plaintiff has the obligation to raise a dispute with Defendants if Plaintiff thinks the production was incomplete. This may be the case if there is an actual dispute about whether certain documents should be produced. That, however, is not the case here. Subject only to boilerplate objections, Defendants agreed to produce financial and marketing documents, and when the Court inquired, "[d]o you have in your possession documents that are responsive to these requests that weren't produced," Defendants responded that they did not know. Rule 26(e)(2) squarely places the obligation on Defendants to supplement their productions with any information that has rendered their response materially incomplete or incorrect.

Thus, to the extent Defendants agreed to produce documents or answer interrogatories, Defendants shall supplement their productions and responses. As an example, Defendants have

apparently not provided financial information (e.g., documents responsive to request no. 29) regarding Defendants Ademco and ADI. Such omission, which Defendants agreed that they "will produce documents responsive to this request," plainly renders Defendants' response materially incomplete, and, therefore Defendants must supplement their response with financial information for Ademco and ADI responsive to request no. 29. The Court notes that some of Plaintiff's requests *may* not need to be supplemented because the requests simply are not incomplete or inaccurate. For instance, Plaintiff has offered circumstantial evidence, in the form of promotion on Defendants' website of the pre-low battery feature in a smoke detector,[10] that Defendants may be in possession of other marketing/promotional materials that might render Defendants' production materially incomplete. On the other hand, Defendants agreed to provide marketing information with regard to the pre-low battery feature for all Defendant companies, and failure to do so would render Defendants' production materially incomplete. To be clear, "in an abundance of caution, and in view of defendants' untenable [although sometimes contradictory] position as to the limited scope of Rule 26(e)," Pizza Pub. Co., 2000 WL 1457010, at *1, the Court reinforces its earlier holding and orders that if Defendants are aware of any marketing/promotional or financial documents that have not been produced and such omission would make their prior productions/responses materially incomplete or inaccurate, Defendants are to supplement their production with such documents or answers.

[10] The promotional material on the website is direct evidence of incomplete production, but as far as other omissions it is circumstantial. As with all discovery, the Court cannot dig through the parties' documents to assure that the production is complete but can only rely on the parties' good faith.

D. Motion for a Separate Trial on the Strategic Supplier Claim (Count 9)

Defendants request, pursuant to Federal Rule of Civil Procedure 42(b), a separate trial on count 9–breach of the Strategic Supplier Agreement (SSA). In support of their motion, Defendants argue that the SSA claim is clearly separable from the product recall claims (counts 1-8) and the patent counterclaims. In addition, Defendants argue that judicial efficiency will be served because the SSA claim is ready for trial, while the other claims are tied up in summary judgment and other motions, and resolution of the SSA claim will foster settlement of the remaining claims. Finally, Defendants generically assert that it would be prejudiced if a separate trial were not ordered because the jury might be confused by three unrelated claims and a determination on the SSA claim would be delayed unnecessarily.

Plaintiff responds by arguing that it will be prejudiced if a separate trial is ordered because it, presumably because it does not intend to settle the separated claims, would have to prepare for two jury trials. Similarly, Plaintiff asserts that judicial efficiency will not be promoted because it does not foresee settlement of the potentially separated claims. Plaintiff also argues that Defendants are attempting to use Rule 42 as a means to force Plaintiff to settle the supposedly less valuable product recall claims.

Federal Rule of Civil Procedure 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, [or] counterclaim." Under Rule 42(b), district courts have "considerable latitude in deciding the most efficient and effective method of disposing of the issues in a case, so long as a party is not prejudiced." Rolscreen Co. Pella Prod., 64 F.3d 1202, 1209 (8th Cir. 1995); accord, e.g., O'Dell v. Hercules, Inc. 904 F.2d

1194, 1201-02 (8th Cir. 1990). Factors considered include "the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion" as well as prejudice. See, e.g., O'Dell, 904 F.2d at 1201-02. These factors are considered against the backdrop that "separate trials remain the exception rather than the rule." In re Blech Sec. Litig., No. 94-7696, 2003 WL 1610775, at *12 (S.D.N.Y. Mar. 26, 2003); United States v. Dravo Corp., Wetherill v. Univ. of Chicago, 565 F.Supp. 1553, 1566-67 (N.D. Ill. 1983) ("Because a single trial generally fosters judicial efficiency, courts have ordered separate trials only when 'clearly necessary.'") (footnote omitted). In fact, "it is only in exceptional instances where there are special and persuasive reasons for departing from this practice [trying all claims together] that distinct causes of action asserted in the same case may be made the subjects of separate trials." Miller v. Am. Bonding Co., 257 U.S. 304, 308 (1921).

Here, Plaintiff does not appear to dispute that the product recall claims, the SSA claim, and the patent claims are legally separable.[11] That the claims are separable or involve distinct issues does not mandate a separate trial. FED. R. CIV. P. 18(a) and 13(b). Rather, one or more of the above factors must weigh in favor of a separate trial, and Defendant has the burden to show that separate trials are necessary or preferable. E.g., Reading Tube Corp. v. Employers Ins., 944 F.Supp. 398, 404 (E.D. Pa. 1996).

Defendants' generic and speculative arguments concerning prejudice are unpersuasive. The Court finds no reason to even speculate that a jury could not compartmentalize the different

---

[11] Plaintiff does point out that the claims do have some factual similarities regarding the parties' relationships and dealings. In addition, Plaintiff explains that if two trials were ordered, duplicative witnesses would be forced to testify at each trial.

claims and evidence. Moreover, Defendants brought at least one of the additional claims–the patent claim–into this case. In any event, court instructions could temper or cure any jury confusion. See, e.g., Aldous v. Honda Motor Co., No. 94-1090, 1996 WL 312189, at *2 (N.D.N.Y. May 30, 1996); Wetherill, 565 F.Supp. at 1567. Further, Defendants' only other claim of prejudice–waiting for the summary judgment motions to be decided on the product recall and patent claims before a trial on all claims could be had–is simply inadequate to require a separate trial on the SSA claim. See Tri-R Systems, Ltd. v. Friedman & Sons, Inc., 94 F.R.D. 726, 728 (D. Colo. 1982) ("[T]he mere possibility of some prejudice does not justify separate trials where such prejudice is not substantial and there are strong countervailing considerations of economy."). On the other hand, Plaintiff and the Court could suffer significant prejudice if a separate trial on the SSA claim is ordered. Plaintiff has represented at the hearing on this matter and in its brief that settlement of the remaining claims, especially the patent claim, is quite unlikely. Thus, Plaintiff would be forced to try two separate jury trials, and the Court would be required to clear separate time periods for two separate trials.

Similarly, Defendants' arguments regarding the efficiencies of a separate trial on the SSA claim are unpersuasive. Resolution of the SSA claim in a separate trial likely will not prompt a settlement of the product recall claims *and* the patent claims.[12] Plaintiff's counsel represented at the hearing on this matter that "[w]e're going to trial on the patent case unless they give us enough money now to make us not go forward on the patent case. And my marching orders are

---

[12] The Court speculates only because Defendants' efficiencies argument is entirely based on speculation.

that's what we're doing without regards to what happens with the SSA claim."[13] Moreover, given the resolution of the motions herein, the impediments to trial on the patent claims have largely been removed, and the Court will strive to ensure that a substantial delay will not occur.[14]

Finally, Defendants' argument that judicial efficiency will be promoted by a separate trial on the SSA claim because it then would not be financially prudent to have a separate trial on the product recall claim is unavailing for a variety of reasons. First, as mentioned, two trials would still be likely given Plaintiff's apparent resolve to try the patent claim. Second, the financial prudence of trying the product recall claim (*Plaintiff's* claim) cannot be determined on the basis of Defendants' speculation about its value. Third, this Court would hesitate to order a separate trial of claims with the hope that doing so would place a financial strain on the value of one

---

[13] Later, Defense counsel represented that "[m]y information [from the client] leads me to believe that a bifurcation would almost assure a second trial." Given these representations regarding efficiencies, the Court would be hard pressed to order separate trials in the absence of significant prejudice.

[14] Defendants' citation to Zerostat v. Components, Ltd. v. Shure Bros., Inc., 91 F.R.D. 164 (N.D. Ill. 1981) and Davis & Cox v. Summa Corp., 751 F.2d 1507, 1517 (9th Cir. 1985) for the proposition that efficiency will be served by a separate trial on the SSA claim because the product recall and patent claims are not ready for trial is unavailing. Zerostat is plainly distinguishable. Zerostat was a patent infringement action and discovery was "substantially completed on the patent issues" when the defendant sought to amend its answer to assert an antitrust counterclaim. 91 F.R.D. at 165. Given the "advanced stage of discovery on the patent issues" and the fact that the counterclaim "inject[ed] a host of entirely new issues" necessitating discovery, the two claims were tried separately. Id. at 166. Such is not the case here. In addition, unlike Davis, the Court does not foresee a "substantial period" of delay for a trial on all claims. Moreover, the issue of bifurcation or ordering separate trials is committed to the sound discretion of the district court because such matters are governed by the particularities of individual cases.

party's claims. The parties may, and are encourage to, settle their differences, but not by means of the procedural orders of this Court.

In the end, there are simply no special circumstances that dictate the SSA claim be tried separately. On the contrary, in this case, the purposes underlying the general rule suggest that all the claims be tried in one trial. Wetherill, 565 F.Supp. at 1566-67 ("Because a single trial generally fosters judicial efficiency, courts have ordered separate trials only when 'clearly necessary.'") (footnote omitted). Accordingly, Defendants' motion is denied.

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion to Strike Defendants' Cross-Motion for Summary Judgment of Patent Invalidity and Opposition to Plaintiff's Motion for Summary Judgment of Patent Infringement (Doc. No. 89) is **GRANTED**. The 35 U.S.C. §§ 102(g) and 102(b) defenses shall be excluded from this case.

2. Defendants' Motion to Strike Plaintiff's Third "Supplemental" Responses to Defendants' Second Set of Interrogatories (Doc. No. 79) is **DENIED AS MOOT**.

3. Defendants' Motion for a Separate Trial on the Strategic Supplier Agreement Claim (Count 9) (Doc. No. 94) is **DENIED**.

4. Plaintiff's Motion to Require Supplementation of Discovery Responses (Doc. No. 85) is **GRANTED** consistent with directions provided herein.

Dated: September 26, 2003

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge